## No. 16,564.

MIDDLETON ET AL. *v.* STAVELY.
(235 P. [2d] 596)

Decided July 16, 1951.   Rehearing denied August 14, 1951.

MARY C. GRIFFITH, for plaintiff in error.

Messrs. HASTINGS & LEFFERDINK, Mr. CLIFFORD W. MILLS, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

In an action for commission as broker in the sale of farm lands, Stavely procured a judgment in the trial court against the Middletons in the sum of $1,000. Three grounds for reversal are here urged.

First is specified the insufficiency of the facts to support the judgment, in that, as alleged, the burden of proof of establishing a contract of agency by clear and convincing testimony was not sustained by defendant in error.

It is not disputed that Stavely was a licensed real-estate broker; that Snodgrass was a salesman licensed under him; that on August 5, 1948, Bowman came to their office as a prospective ranch purchaser; that Snodgrass first told Bowman of the Middleton property, took him to see it, and advised Mrs. Middleton, who was one of the owners, that he had brought him to look at the place; that at his request Mrs. Middleton had her daughter show them over the place, and that Bowman returned on the following day and contracted for its purchase. The material conflict in the evidence concerns the question of the prior employment of Snodgrass by Middletons to act as broker for them in the sale of their property. The testimony of Snodgrass was to the effect that on the morning of July 16, 1948, he took land buyers, accompanied by Russell, a real-estate agent from Texas, to look at the Middleton place, and was told by Mrs. Middleton

that the place was for sale but that he would have to discuss it further with Mr. Middleton; that Mr. Middleton arrived later; that Snodgrass introduced himself and Russell as real-estate agents, and said they had some land buyers; that Middleton said the farm was for sale, stated the price, said he would pay a commission for its sale, assented to a five percent commission and gave him the description of the land. Snodgrass further testified that thereafter, on August 5, when Bowman came to Stavely's office to inquire about buying a ranch and Snodgrass took him to the Middleton farm, Mr. Middleton arrived while they were still at the farm and then met Bowman, but the subject of commission was not discussed.

Snodgrass' testimony as to his employment was corroborated in part, and contradicted in part, by the deposition of Russell, the Texas real-estate broker. The latter testified that when he accompanied Snodgrass to the farm on July 16, Snodgrass inquired of Mrs. Middleton whether or not they could handle the farm on terms and whether they still wanted him to go ahead and sell the place as previously agreed. He further testified that after Mr. Middleton arrived he, Russell, discussed with him the matter of terms and a proposed down payment in the amount that would be left after payment of commission, and that Mr. Middleton proposed, if the intended purchaser would put up a sufficient forfeit with Mr. Snodgrass, he would "hold the place for a month or six weeks for you until you can sell some other property down there if you can do that," and that Snodgrass and he had talked to Middleton about the commission.

Mr. Middleton testified, to the contrary, that he was attempting to sell his farm through newspaper advertisement and did not care to deal through a broker; that on July 16 he returned in the afternoon from the Rocky Ford hospital where he had taken treatment; that Snodgrass and two or three others were at the farm and sat in the back seat of his car; that Snodgrass said he was a "real-estater" and Middleton said he wanted to sell the

place "but not to any 'real-estater' "; that he told them the price at which he would sell, but had no conversation with Russell. He also testified that on August 5, when' Snodgrass brought Bowman to see the farm he was in Rocky Ford for medical treatment and did not see either Mr. Snodgrass or Mr. Bowman, but that Mr. Bowman came back on August 6, introduced himself, and they closed the deal for sale and purchase of the farm. Reliance is placed on the testimony of Caroline Middleton to corroborate that of her father, as to his conversation on July 16, refusing to sell through a broker, but she testified: "Mr. Snodgrass got in the car and there was a very short conversation which I didn't hear. They introduced themselves. Mr. Snodgrass did, and the Texas men, and they got out of the car. I heard the Texas man ask daddy, 'Mr. Middleton, how much are you asking for the place?' And he said, 'Twenty-two.' And the man said, 'Did you say twenty-two and a half?" And he said, 'Yes.' "

Bowman, the purchaser, testified that on August 5, when he contacted Snodgrass with regard to purchase of farm property, Snodgrass 'told him, among other places, of the Middleton farm, saying, "It is for sale, but I don't have it listed with me yet," and that Snodgrass then took him to see it and they were shown the property by the daughter, Caroline Middleton, but that he did not see Mr. Middleton on that day.

Proof of a contract of agency is not peculiar. It requires a fair preponderance of the evidence. Whether or not it is so established is properly for determination of the trier of the facts, and if such determination is supported by substantial evidence it is not within the province of a reviewing court to change it. Notwithstanding the contradiction in the testimony here, there is substantial evidence to support the conclusion of the trial court as to the employment of Snodgrass, and if he was authorized to act as broker on July 16, such employment presumably continued until August 5, when admittedly he produced a purchaser ready, willing and able

to buy. The evidence is sufficient to support the judgment.

■ Error also is specified in the denial by the court, of petition for leave to file motion for new trial on the basis of newly-discovered evidence which, it is contended, shows the falsity of the testimony of plaintiff. The evidence so tendered was the affidavit of a physician of Rocky Ford, Colorado, to the effect that on the 5th day of August Mr. Middleton was present at his office in Rocky Ford for treatment and left there at about 4:00 o'clock p. m. to return to his home. The testimony of Snodgrass was to the effect that on that date, when he took Bowmans out to the Middleton farm, he could not remember the time of day, but that it must have been in the morning, and that Mr. Middleton was not there when they arrived, but came before they left at about the middle of the day. This proffered evidence in denial of the Snodgrass testimony was merely cumulative to that of defendants' other witnesses and concerned a matter not vital to plaintiff's case. It does not in any way contradict the testimony as to employment of Snodgrass on July 16, or as to his procurement of the purchaser. The denial of the petition for leave to file motion for new trial on the basis of such evidence was not an abuse of discretion.

■ Finally, it is specified that the court erred in admitting in evidence the deposition of Russell over objection of defendants Middleton for the reason that they did not have opportunity to cross-examine the witness or submit cross-interrogatories. Russell was the Texas real-estate broker who had been present when Snodgrass showed the ranch to interested prospects on July 16. It appears that defendants were formerly represented by attorney Frank A. Safranek; that he requested jury trial, but, as asserted in the brief, did not advise his clients of the trial, and himself failed to appear at Hugo at the time set therefor; on the contrary, on the trial date while the court and opposing counsel waited, with Russell present

to testify, Safranek telephoned the court saying he was unable to attend court on that day due to the fact that he was having dental work done in Denver and stipulated that if continuance were granted the case could be tried without a jury and the testimony of witnesses residing in Texas could be taken by deposition. Thereupon the case was ordered continued until a later date, to be then tried without a jury, and certain costs including expenses of bringing witness Russell from Texas were assessed against defendants. Thereafter Safranek filed motion for leave to withdraw his appearance, which was subsequently granted by court order. After the filing of that motion, and prior to action thereon by the court, Russell's deposition was taken in Texas.

There is no showing in the record that the deposition was taken without proper notice to Safranek or that Safranek had then advised the court or opposing counsel that he had sought to withdraw as attorney for defendants. On the contrary, the record discloses that upon objection to admission of the deposition by defendants' present counsel, the court made inquiry as to notice of taking of the deposition and plaintiff's counsel said: "A stipulation was entered with Mr. Safranek who at that time was representing the Middleton's. You will find a stipulation that was signed by Mr. Safranek * * * ." The deposition was read into the record and the original deposition is not before us, nor is the stipulation; accordingly, we must assume that counsel's statement is correct and that the deposition was taken upon the written stipulation of Safrenek who appeared of record as attorney for defendants.

"Generally speaking, an attorney of record has implied authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial, which are necessary or incidental to the management of the suit, and which affect only the procedure or remedy, as distinguished from the cause of action itself." 5 Am. Jur. 314, §91. So it has been held that an attorney has

authority to waive notice of time and place of taking a deposition (*Buddicum v. Kirk,* 3 Cranch [U.S.] 292, 2 L. Ed. 444), and may bind his client by stipulation waiving jury trial. *Shores Co. v. Iowa Chem. Co.,* 222 Iowa 347, 268 N.W. 581, 106 A.L.R. 198. We find no abuse of discretion by the trial court in admitting the deposition.

The question as to whether the attorney's conduct justifies disciplinary action is not before us in this proceeding; nor is the question as to his personal liability to his client for damages resulting from negligence. The neglect of an attorney is attributable to his client and he ordinarily may be relieved therefrom only where like negligence of the client would be excusable. The granting or denial of relief lies within the discretion of the trial court, and reversal may be had only where discretion has been abused. *First State Bank v. Larsen,* 72 Mont. 400, 233 Pac. 960; *McDaniel v. Hoblit,* 34 Wyo. 509, 245 Pac. 295. No such abuse appears in the instant case.

The judgment is affirmed.

MR. JUSTICE HOLLAND and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE CLARK not participating.