Argued and submitted October 26, 2001, reversed in part; otherwise affirmed December 11, 2002

J.C. COMPTON COMPANY,
an Oregon corporation,
dba River-Bend Sand & Gravel Co.
and Valley Concrete,
*Respondents,*

*v.*

Ronald BREWSTER;
Jerry Molan; Daniel L. Kerr;
Unique Concrete Products, Inc.,
an Oregon corporation;
DK Concrete, LLC,
dba Unique Concrete Services;
John Does 1, 2, and 3;
and John Doe Legal Entities 1, 2, and 3,
*Defendants,*

*and*

DK INVESTMENT COMPANY, LLC,
*Appellant.*

Jerry L. MOLAN,
*Third-Party Plaintiff,*

*v.*

DK CONCRETE, LLC,
*Third-Party Defendant.*

DK INVESTMENT COMPANY, LLC,
on behalf of Unique Concrete,
*Third-Party Plaintiff,*

*v.*

RIVER-BEND SAND & GRAVEL CO.,
and Valley Concrete; Jerry Molan;
Ronald Brewster; DK Concrete, LLC,
dba Unique Concrete Services;
and Tom Bauer,
*Third-Party Defendants.*

97C-12191; A104352

59 P3d 1288

Clayton C. Patrick argued the cause and filed the briefs for appellant.

D. Michael Mills argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman,* Judges.

SCHUMAN, J.

---

* Schuman, J., *vice* Armstrong, J.

## SCHUMAN, J.

In this contract dispute between two businesses, defendant DK Investment Company, LLC,[1] appeals from adverse judgments for damages and attorney fees. Based on a special verdict form, the trial court concluded that defendant breached a contract that it had formed with plaintiff J.C. Compton Company (the breach of contract claim) and, alternatively, that plaintiff could reach defendant in its capacity as a member of a limited liability company that owed plaintiff money (the "piercing the veil" claim). The court entered judgment awarding plaintiff damages and attorney fees. We affirm the judgment for damages, reverse the judgment on the piercing claim, and reverse the judgment for attorney fees.

Plaintiff, doing business as River-Bend Sand & Gravel Co. and Valley Concrete, supplied gravel and concrete to companies that would then deliver, pour, and finish it at construction sites. One of plaintiff's customers was a company called Unique Concrete Services. As of December 1996, Unique Concrete owed plaintiff about $92,000.

Between January and March of 1997, plaintiff's controller had a number of conversations and exchanged some correspondence with Dan Kerr, who was a member and manager of defendant. Kerr was curious about whether plaintiff planned to continue supplying goods and services to Unique Concrete despite that company's debt to plaintiff. Plaintiff's controller suspected that Kerr was interested in buying Unique Concrete, and he was correct. The controller also believed that those conversations and exchanges of documents with Kerr amounted to a contract in which defendant, by its manager Kerr, promised to assume the debts of Unique Concrete or to provide security for them, and in return, plaintiff would continue to provide goods and services to Unique Concrete and its successor. Defendant disagrees. That disagreement forms the core of the breach of contract claim.

---

[1] Originally, defendants in this action included several individuals and entities in addition to DK Investment Company, LLC. Only DK Investment appeals. Hereafter, "defendant" refers only to DK Investment.

In early 1997, Kerr participated in the formation of a new entity, DK Concrete, LLC, of which defendant was one member. On February 28, 1997, DK Concrete purchased the assets of Unique Concrete, took over its business, and assumed some of its liabilities. Shortly thereafter, internal disputes arose within DK Concrete. As a result, in June 1997, defendant sold its interest in that company. At the time, DK Concrete as successor to Unique Concrete still owed plaintiff $51,758.94.

Plaintiff then brought this action for breach of contract against defendant directly and against defendant as the alter ego of Unique Concrete and its successor. At the close of plaintiff's case, defendant moved for a directed verdict. The trial court denied the motion insofar as it related to the breach of contract claim and the piercing claim. Subsequently, the jury returned a special verdict form finding, with respect to the breach of contract claim, that defendant had agreed to pay the debt owed to plaintiff by Unique Concrete and its successor and had breached that agreement, resulting in damages to plaintiff of $51,758.94. On the piercing claim, the jury found that defendant, through its improper conduct, caused plaintiff to enter into an agreement with DK Concrete, that DK Concrete was grossly undercapitalized, and that the undercapitalization caused DK Concrete to default on its obligations to plaintiff, *but* that the improper conduct and undercapitalization did not cause plaintiff any damages. Based on those findings, the trial court entered a money judgment against defendant on plaintiff's breach of contract claim and its piercing claim. Defendant objected to the judgment, arguing that, because the jury found no connection between defendant's improper conduct and plaintiff's damages, defendant should have prevailed on the piercing claim. The trial court denied the objection. Defendant also moved for judgment notwithstanding the verdict (JNOV) or for a new trial. The trial court denied the motion and thereafter entered a supplemental judgment against defendant for plaintiff's attorney fees.

Defendant's assignments of error fall into three categories. Regarding the breach of contract, it contends that the trial court erred in denying its motion to exclude certain evidence regarding the communications between plaintiff

and Kerr and in denying its motions for directed verdict. Regarding the piercing claim, defendant assigns error to the trial court's refusal to exclude certain expert testimony regarding undercapitalization and to the trial court's denial of defendant's objection to the judgment.[2] Finally, defendant assigns error to the award of attorney fees.

■     We begin with the breach of contract claim. We will reverse the denial of a motion for a directed verdict only if there is no evidence from which a jury could have found the facts necessary to make out a *prima facie* case. *Ranger Ins. Co. v. Globe Seed & Feed Co., Inc.*, 125 Or App 321, 327, 865 P2d 451 (1993), *rev den*, 318 Or 458 (1994). We therefore begin our treatment of the contract claim with the evidentiary issue, because whether the disputed evidence was properly admitted obviously bears on the determination of whether there was sufficient evidence to support submitting the issue to the jury.

■     Defendant argues that the trial court erred "in allowing the introduction of a number of [specified] documentary exhibits * * * as well as the testimony of the plaintiff's controller, Harold Walton." According to defendant, the exhibits and the testimony are evidence of an attempt to negotiate a compromise of plaintiff's claim for money owed to plaintiff by Unique Concrete and were therefore inadmissible under OEC 408. That provision states, in part:

"(1)(a)   Evidence of * * * compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

"(b)   Evidence of conduct or statements made in compromise negotiations is likewise not admissible."

Whether an offer is intended as a compromise is a question of fact. *Delaney v. Georgia-Pacific*, 42 Or App 439, 450, 601 P2d 475 (1979), *rev den*, 288 Or 519 (1980). We therefore must affirm the trial court's decision to admit the evidence if the

---

[2] Defendant also assigns error to the court's denial of its motion for JNOV or a new trial. Because those assignments are based on a contention that the evidence was insufficient to sustain a verdict for plaintiff, the assignments are not subject to review on appeal, *see, e.g., Burke v. American Network, Inc.*, 95 Or App 274, 277, 768 P2d 924 (1989). We therefore do not address them further.

evidence is relevant for a purpose other than to show that plaintiff intended to negotiate a compromise or settlement.

■ The specified documents consist of correspondence between Kerr (on behalf of DK Investments) and officers of Unique Concrete; a "letter of intent" describing the terms of the sale of Unique Concrete to the as-yet unformed DK Concrete; an appraisal prepared for Kerr of some property; and an "Agreement to Complete the Sale" of one of Unique Concrete's owner's share of Unique Concrete to defendant. Many of those documents were sent or faxed to plaintiff. The only reference to Unique Concrete's debt to plaintiff is one sentence in the "Agreement to Complete Sale." That sentence reads, "[Plaintiff] River Bend will work out an acceptable deal on the current and past due debts with Unique." The documents, then, deal with the sale of Unique Concrete to either defendant or DK Concrete. One minor aspect of the sale was Unique Concrete's financial condition, including its debt to plaintiff. That minor aspect is mentioned only once, in passing. The evidence is relevant to prove a contract between plaintiff and defendant to assume the debts of Unique Concrete and its successor, DK Concrete, or to provide security for those debts in exchange for plaintiff continuing to supply its product to DK Concrete. It is not evidence of an offer of compromise or part of any negotiations regarding the compromise of a debt owed by defendant to plaintiff. Admitting those documents did not violate OEC 408.

■ Defendant also assigns error to "the testimony of the plaintiff's controller, Harold Walton, all of which related to the negotiations that took place between January of 1997 and March of 1997 regarding the possible purchase of Unique Concrete by either DK Investments or * * * DK Concrete." Defendant preserved the issue by making a "continuing objection." However, the assignment of error does not identify any particular statements by Walton, whose testimony occupies more than 250 pages of transcript. We will not search the record in order to identify and evaluate every statement that was admitted arguably in violation of OEC 408. *See* ORAP 5.45(4)(c) ("The court may decline to consider any assignment of error that requires the court to search the record to find the error.").

■ Defendant also argues that the court erred in admitting the disputed evidence because the final written contract between DK Concrete and Unique Concrete contained an integration clause. That clause reads, in part:

> **"Prior Agreements.** Except to the extent prior agreements are incorporated herein, this document is the entire, final and complete agreement *of the parties* pertaining to the sale and purchase of the property, and supersedes and replaces all written and oral agreements heretofore made or existing by and between *the parties* * * *."

(Boldface in original; emphasis added.) Although that clause might make the documents irrelevant or inadmissible in construing the contract between DK Concrete and Unique Concrete, it does not bear on the relevance or admissibility of the documents to establish a completely different contract, *i.e.*, the one between defendant and plaintiff.

We turn, then, to the question whether there was any evidence to support the court's decision to submit the contract claim to the jury.

■ As a threshold matter, defendant contends that this claim is precluded by ORS 63.165, which provides, in part, "A member or manager [of a limited liability company] is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager." ORS 63.165(1). That statute, however, does not affect plaintiff's claim here; in this claim, plaintiff alleged and the jury found that defendant was liable, apart from any role it might play as DK Concrete's alter ego, based on a separate and independent contract between defendant and plaintiff.

■ The gist of defendant's argument is that the record contains no competent evidence of an agreement between plaintiff and defendant that defendant would assume the obligations owed to plaintiff by Unique Concrete and its successor DK Concrete. We disagree. We find evidence from which a rational juror could conclude that such an agreement existed. In the early stages of the relationship between plaintiff and defendant, well before DK Concrete was formed, defendant acknowledged in conversations with plaintiff that

DK Concrete could not survive as Unique Concrete's successor without some sort of a debt payment agreement with plaintiff. Shortly thereafter, defendant sent plaintiff information showing defendant's "estimated net worth" at nearly $3 million. Further, following conversations regarding how defendant might provide security for Unique Concrete's debt to plaintiff in order to ensure that plaintiff would continue doing business with Unique Concrete's successor, defendant sent plaintiff an appraisal of certain real property owned by defendant. In early February 1997, plaintiff sent defendant a brief summary of Unique Concrete's balance owing to plaintiff; the summary was captioned, "Below is what we would like to see on bringing Unique Concrete current." The next day, defendant sent plaintiff a letter indicating that the payment proposed by plaintiff would "be paid within five business days after we close the transaction" and agreeing to carry the remaining debt under a "Note and Trust Deed" with payments beginning on March 15, 1997, and continuing "until paid." Defendant stated that it needed to delay immediate payment "so I can get my reimbursements back on the 10th from construction loans." Again, at that time, DK Concrete did not exist, and the letter was signed by Kerr on letterhead captioned "DK Investment Company, L.L.C.[,] Investments in Real Estate." Subsequently, defendant, in its own name, sent plaintiff $6,000, which plaintiff applied against the account of Unique Concrete.

Even after the formation of DK Concrete, defendant continued to take actions and make representations that a reasonable juror could conclude manifested an agreement to pay plaintiff the obligations of Unique Concrete and its successor. For example, defendant sent plaintiff notice that defendant anticipated proceeds from a loan and planned to use those proceeds to pay plaintiff for DK Concrete's March 1997 invoices. That same communication indicated that defendant wanted plaintiff to draw up a note that would obligate defendant for DK Concrete's November 1997 invoices. Another communication from defendant to plaintiff indicated that defendant would soon pay plaintiff between $10,000 and $15,000, which defendant expected to realize from its sale of two homes.

From the foregoing, a reasonable juror could conclude that plaintiff and defendant reached an agreement regarding defendant's obligation to pay plaintiff for the debts at issue in this case. Further, evidence supports a conclusion that defendant received a benefit from the agreement: Kerr testified that, had DK Concrete been successful, defendant, in its role as a construction company, could have received substantial discounts in services from DK Concrete.

The record, then, contains sufficient evidence supporting the court's decision to permit the jury to decide whether defendant agreed to assume the debts due from Unique Concrete and its successor, DK Concrete, to plaintiff. For purposes of the merits of defendant's appeal, as opposed to its appeal from the attorney fee award discussed below, that conclusion renders irrelevant defendant's assignments of error regarding the piercing claim. The jury returned a special verdict form expressly finding defendant in breach of its contract and finding damages in the amount ultimately awarded by the trial court. Any error regarding the piercing claim, for which the jury found no damages, would therefore have no effect on the amount of the trial court's money judgment in favor of plaintiff.

■      The final issue we must resolve is whether plaintiff is entitled to attorney fees. Generally, a party is not entitled to an award of attorney fees unless the award is authorized by statute or by a specific contractual provision. *Wilkes v. Zurlinden*, 328 Or 626, 631, 984 P2d 261 (1999); *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). The only basis on which plaintiff could claim fees in this case is the contract between plaintiff and DK Concrete. Plaintiff maintains that, because it successfully pierced the veil of DK Concrete's status as a limited liability company in order to reach defendant, then defendant individually should be liable for the obligations that DK Concrete assumed in its contract. One of those obligations was to pay attorney fees.

■      We assume without deciding that plaintiff could recover attorney fees based on the theory that it advances. However, plaintiff's theory is based on the premise that it prevailed on its piercing claim. Because that premise is

wrong, plaintiff's theory of recovery fails. In order to pierce DK Concrete's status and hold defendant accountable for DK Concrete's obligations, plaintiff must prove, among other things, "a relationship between the misconduct and the plaintiff's injury." *Amfac Foods v. Int'l Systems*, 294 Or 94, 111, 654 P2d 1092 (1982). The jury in the present case found that defendant's undercapitalization of DK Concrete was improper conduct and that it caused DK Concrete to breach its agreement with plaintiff, but it also found that the conduct caused plaintiff no damages. The damages, in other words, resulted from defendant's own breach of its separate contract, not from any breach by DK Concrete for which defendant might be responsible as an alter ego. Therefore, the trial court should have sustained defendant's objection to the form of judgment and entered judgment on the piercing claim in favor of defendant.[3] As a result, there is no basis for awarding attorney fees to plaintiff. That conclusion, in turn, eliminates the only basis for an award of attorney fees.

Judgment on plaintiff's piercing claim reversed; supplemental judgment for attorney fees reversed; otherwise affirmed.

---

[3] In *Building Structures, Inc. v. Young*, 328 Or 100, 968 P2d 1287 (1998), the Supreme Court held that a party objecting to a legally defective jury verdict waives that objection by not making it before the jury is dismissed. Here, there was no defective verdict.