Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/06/2021 08:12 AM CDT

- 202 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

McGill Restoration, Inc., a Nebraska corporation,
appellee, v. Lion Place Condominium
Association, an unincorporated
association, appellant.

___ N.W.2d ___

Filed May 14, 2021.    No. S-20-416.

1. **Judgments: Appeal and Error.** In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.

2. ____: ____. After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.

3. **Trial: Evidence: Appeal and Error.** Judicial discretion is allowed to determine the relevancy of evidence, and such determination will not be disturbed on appeal unless it constitutes an abuse of discretion.

4. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, but a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion.

5. ____: ____: ____. An appellate court reviews de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, and an appellate court reviews for abuse of discretion how the trial court applied the appropriate standards in deciding whether to admit or exclude an expert's testimony.

6. **Pretrial Procedure: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.

7. **Judgments: Words and Phrases.** A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power,

- 203 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

8. **Damages: Appeal and Error.** The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved.

9. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.

10. ____: ____. When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.

11. **Contracts: Breach of Contract.** As a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract.

12. **Contracts: Actions: Substantial Performance: Proof.** To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract.

13. **Contracts.** As a general rule, every contract for work or services includes an implied duty to perform the work or services skillfully, carefully, diligently, and in a workmanlike manner.

14. **Contracts: Words and Phrases.** In a "workmanlike manner" connotes work in the same manner that a person skilled in doing such work would do it, and in a manner generally considered skillful by those capable of judging such work in the community of the performance.

15. **Constitutional Law: Jury Trials.** The right to a jury trial is guaranteed by Neb. Const. art. I, § 6.

16. **Jury Trials: Waiver: Statutes.** A waiver of a jury trial in district court is statutorily governed by Neb. Rev. Stat. § 25-1126 (Reissue 2016), which provides an exclusive list of the manners in which a waiver occurs.

17. **Attorney and Client.** The right of an attorney to enter an appearance for a party can be called in question only by the party.

18. **Attorney and Client: Presumptions.** When an attorney appears in an action as the representative of a party to the action, the presumption of the law is that the attorney appears by the authority of the party whom the attorney assumes to represent.

- 204 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

19. **Attorney and Client: Negligence.** A client is bound by the acts, omissions, neglect, and fraud of the client's attorney if such conduct is within the attorney's scope of express, implied, apparent, or ostensible authority.

20. **Attorney and Client.** From the nature of the attorney-client relationship itself, a lawyer derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions.

21. **Attorney and Client: Jury Trials: Waiver.** A lawyer's authority to manage the conduct of litigation on behalf of a client encompasses the choice, in a civil action as opposed to a criminal action, to waive a jury trial.

22. **Rules of Evidence: Compromise and Settlement: Appeal and Error.** A court's determination of preliminary questions of fact conditioning the applicability of the exclusionary rule set forth in Neb. Rev. Stat. § 27-408 (Reissue 2016) are reviewed for clear error.

23. **Claims: Evidence: Compromise and Settlement: Public Policy.** The inadmissibility of evidence of negotiations and compromise or settlement of a claim reflects a public policy consideration favoring compromise of disputes.

24. **Claims: Evidence: Compromise and Settlement.** Evidence of negotiations and compromise or settlement of a claim is irrelevant because the transaction is motivated by a desire for peace rather than from the strength or weakness of a claim.

25. **Rules of Evidence: Compromise and Settlement: Impeachment: Public Policy.** To use conduct or statements in compromise negotiations for impeachment would tend to swallow the exclusionary rule and impair the public policy of promoting settlements; therefore, admissibility as an inconsistent statement does not fall under the "another purpose" exception to the exclusionary rule of Neb. Rev. Stat. § 27-408 (Reissue 2016).

26. **Claims: Evidence: Compromise and Settlement.** An admission against interest concerning an element of the disputed claim is not an exception to the general inadmissibility of conduct or statements made in settlement negotiations.

27. **Appeal and Error.** In order to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.

28. **Breach of Contract: Evidence.** Evidence of a deficiency is immaterial without the identity of the person charged with responsibility for the work.

- 205 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

29. **Expert Witnesses: Testimony.** Findings of fact as to technical matters beyond the scope of ordinary experience are usually not warranted in the absence of expert testimony supporting such findings.

30. **Breach of Contract: Contractors and Subcontractors.** Whether a skilled contractor breached a contract to render services in the practice of the trade by failing to conduct the work in a workmanlike manner depends on whether the contractor exercised the skill and knowledge normally possessed by members of the trade in good standing in similar communities.

31. **Breach of Contract: Expert Witnesses: Proof.** Ordinarily, the standard of care for the rendering of services in the practice of a trade is outside the common knowledge and experience of ordinary persons and must, therefore, be established by expert testimony.

32. ____: ____: ____. Expert testimony is not necessarily required to establish a breach by the failure to achieve a particular result that can be shown by lay witness observations, but that is when the contract explicitly guarantees a certain result and not just to perform in a workmanlike fashion according to industry standards.

33. **Trial: Expert Witnesses.** It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question.

34. **Expert Witnesses.** An expert must have good grounds for the expert's belief in every step of the analysis.

35. **Words and Phrases.** The term "good grounds" means an inference or assertion derived by scientific method and supported by appropriate validation.

36. **Evidence.** It is a logical fallacy to assume that temporal correlation equals causation.

37. ____. A causation opinion based solely on a temporal relationship is unreliable, because it is not derived from the scientific method and is not based upon sufficient facts or data.

38. **Attorney Fees: Costs.** In determining whether to assess attorney fees and costs and the amount to be assessed against offending attorneys and parties, the court considers a number of factors, including, but not limited to, the 10 factors listed in Neb. Rev. Stat. § 25-824.01 (Reissue 2016).

39. **Attorney Fees: Claims.** Neb. Rev Stat. § 25-824(5) (Reissue 2016) contemplates that attorney fees may be assessed when a party persists in asserting a claim after it knows or reasonably should know it would not prevail on the claim.

40. **Prejudgment Interest: Appeal and Error.** Awards of prejudgment interest are reviewed de novo.

- 206 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

41. **Rules of the Supreme Court: Pleadings: Prejudgment Interest: Notice.** Compliance with Neb. Ct. R. Pldg. § 6-1108(a) is not determinative where entitlement to interest is based on statute and the adverse party had notice and an opportunity to be heard prior to judgment.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant.

Jodie Haferbier McGill, of McGill Law, P.C., L.L.O., for appellee.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. NATURE OF CASE

In an appeal from a judgment in a bench trial in favor of a contractor against the homeowners' association that hired it to conduct repair work, the homeowners' association argues that the court erred in finding it had waived, by one of the methods described in Neb. Rev. Stat. § 25-1126 (Reissue 2016), its right to a jury trial. The homeowners' association disagrees with the lower court's conclusion that it had to present expert testimony to support its defense and counterclaims asserting that the repair work was done in an unworkmanlike manner. It also argues the court erred in excluding lay testimony of other contractors, in finding its expert witness lacked foundation for his opinions, and in excluding testimony relating to what the court found to be compromise negotiations. Finally, the homeowners' association challenges the court's award of prejudgment interest and attorney fees. We affirm.

## II. BACKGROUND

McGill Restoration, Inc. (McGill), sued Lion Place Condominium Association (Lion) for breach of a series of oral

- 207 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

contracts whereby Lion was to pay $25,000 to McGill for materials and services performed on a building managed by Lion in Omaha, Nebraska. The work entailed, for a specified portion of the facade, repairs to prior repairs by another contractor. In its complaint against Lion, McGill asserted breach of contract and quantum meruit. McGill sought $25,000, together with costs, prejudgment interest, postjudgment interest, and such other and further relief as the court deemed just and proper.

Lion denied the allegations and pled the affirmative defenses of failure to state a claim, estoppel, laches, failure to perform, failure of consideration, lack of consideration, breach of express warranty, and breach of implied warranty and offset. Lion counterclaimed for breach of contract, breach of implied and express warranties, and negligence.

The case had been filed in county court but was transferred on August 23, 2012, to district court due to the amount of Lion's counterclaim. In response to McGill's requests for admissions, Lion admitted that it had requested McGill to perform repair work on the Lion building, McGill conducted repair work on the Lion building in 2009, McGill sent Lion an invoice for the work, and Lion has not paid McGill the amount reflected in the invoice.

## 1. WAIVER OF JURY TRIAL

During a pretrial hearing on February 13, 2015, on several motions, including a motion by Lion's first counsel, Michael Kennedy, to withdraw, Lion's new counsel stated to the bench that he was appearing at the hearing on Lion's behalf. New counsel stated he would be "becoming the new counsel of record assuming that you allow . . . Kennedy to withdraw." He had, however, already filed on Lion's behalf a motion to disqualify McGill's counsel. Lion's new counsel was the main advocate for Lion during the lengthy hearing, but Kennedy also participated.

The court set the matter for trial to the bench on March 16, 2015. The court specifically asked the parties' attorneys, "I

- 208 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

assume it's to the bench?" Both McGill's counsel and Lion's new counsel stated that was correct. Kennedy did not state anything to the contrary.

The court granted Kennedy's motion to withdraw. McGill had objected to the motion to withdraw on the grounds that it could delay trial for Lion to switch counsel at that short juncture, but Lion's new counsel stated, "I do believe that there is a good chance that I could be ready to go at trial on March 16th, which I understand that it's set for."

Subsequently, on February 23, 2015, Lion's new counsel requested a jury trial and denied that Lion had previously waived its right to a jury trial. A hearing on the matter was held on March 2, approximately 2 weeks before the scheduled bench trial.

At the hearing, Lion's new counsel acknowledged that he had answered in the affirmative at the prior hearing regarding having a bench trial, but explained that he had been under the false impression a jury trial had already been affirmatively waived. New counsel conceded that his discussions with Kennedy had given him that impression. New counsel explained that in a conversation with his client at some later date, he learned his impression was wrong.

New counsel submitted an affidavit by Michael Henery, who was Lion's president at that time, averring that he "was never advised that the matter was scheduled for a bench trial" and that "[a]t no time was [Lion], or members of the Executive Board, including myself, advised of the requirement to elect between a jury trial or bench trial." Lion also submitted an affidavit by Kennedy, averring he "did not waive [Lion's] right to a jury trial in any way whatsoever," elaborating that he "did not file any written waivers of [Lion's] right to a jury trial on behalf of [Lion], and never affirmatively waived [Lion's] right to a jury trial in any court proceeding."

Kennedy acknowledged a conversation he had with the court bailiff asking "to take this case off of the jury trial setting scheduled for March 2-3, 2015," but Kennedy said he did

- 209 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

not during that conversation "indicate that [Lion] did not want a jury trial, or desired a bench trial."

McGill's counsel explained that there had been a telephonic hearing on November 11, 2014, in which two dates were offered—one for a jury trial and one for a bench trial. Kennedy did not know at that time whether Lion wished to waive the right to a jury trial and said he would find out and get back to the court within a week to let it know. Kennedy did not do so, and the bailiff had to attempt several times to contact Kennedy. Eventually, Kennedy contacted the bailiff, directing the bailiff to set trial for the bench trial date.

The court explained from the bench and in its order denying the motion for a jury trial that it had given Lion the choice between a jury trial to commence on March 2, 2015, or a bench trial to commence on March 16. Lion selected the bench trial. The court explained that if it were to continue trial in order to hold a jury trial, the matter would be delayed for another 5 or 6 months, which would be prejudicial to McGill.

## 2. Exclusion of Expert Testimony

McGill moved in limine to exclude witnesses based on Lion's conduct during discovery and the alleged lack of foundation for proposed expert testimony. Lion had listed in a "Designation of Experts," Mark Markuson III, Craig Moore, and Michael as the expert witnesses it was formally designating and intending to call at trial. McGill's amended motion in limine asserted that while Lion had eventually identified three witnesses as its experts, Lion had failed to adequately disclose the foundation and subject matter of their expected testimony.

In Lion's supplemental answers to McGill's interrogatories filed November 25, 2014, Lion identified Michael as a person who has knowledge of any discoverable matter and that the subject matter on which he has knowledge was of "work performed, contract, and deficiencies in performing the work." Likewise, Markuson was identified as having knowledge "of work performed and the issues with [McGill's] deficiencies

- 210 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

in performing the work" and Moore was identified as having knowledge "of work performed and the issues with [McGill's] deficiencies in performing the work."

In response to interrogatories asking for the subject matter on which each expert was expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of grounds for each opinion the expert is expected to give, Lion stated with regard to both Markuson and Moore: "while [he] is expected at trial to give his expert opinions; he has not been retained as an expert in this matter. He is both a witness of fact and an expert." He "will give his qualified and expert opinions concerning the building" and the "improper work done" thereon. Markuson and Moore were each "contacted by [Lion] to inspect and give a bid concerning [McGill's] deficient work on the subject building." Each is a contractor and "has looked over the work performed by [McGill] and has deemed it sub-standard and the work performed was not in line with the standards of construction in the Omaha metropolitan area."

Lion described Michael as having "40 years of experience in construction." Michael was expected to testify as to McGill's "improper work done on the condominium building." Lion set forth that Michael "has looked over the work performed by [McGill] and has deemed it sub-standard and the work performed was not in line with the standards of construction in the Omaha metropolitan area."

At the hearing on the amended motion in limine, McGill referred to exhibit 5, in which Moore averred that he was not an expert for Lion or anyone else in the case, had no intention of voluntarily acting as an expert in the case, and until recently, had no knowledge that he had been identified as an expert in the case. Further, Moore averred that he had not formed any opinions or conclusions contrary to McGill or its work conducted on the Lion building and that the bid to perform repair work was not intended to offer opinions or conclusions regarding McGill or its work on the building. Finally, Moore

- 211 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

averred that he lacked knowledge as to what work McGill had conducted on the Lion building or what work was conducted by other contractors on the building and was without sufficient information to formulate any opinions as to the work completed by McGill as an expert in the case.

McGill also referred to exhibit 4, in which Markuson similarly averred that he never inspected the Lion building for deficiencies, was not aware of what work McGill or other contractors had performed on it, was not hired by Lion as an expert witness in this matter, and had not formed any opinions or conclusions contrary to McGill or its work conducted for Lion.

When asked about the affidavits of Markuson and Moore, Lion explained:

> I believe the — the better way to classify these individuals is they are . . . contractors, they did come out to give replacement work, repair work bids for the Lion . . . property, and therefore they will testify as factual witnesses as to basically what they saw. Whether they saw cracking, whether they saw flaking, whether they saw all that.
>
> . . . .
>
> . . . So we don't need to designate them as an expert witness.

Lion explained that a person with specialized knowledge who is merely testifying as to the work visible to the naked eye is giving lay testimony.

The court explained that "[t]hey can testify what I did and what I saw, but if they start giving opinions as to why this is the situation and what the problem with this is, that's an expert." The court accordingly granted McGill's motion in limine in part as to expert testimony by witnesses Markuson and Moore.

The court denied McGill's motion in limine to exclude Michael's testimony, stating that it would determine during trial whether Michael had the qualifications to be an expert. Following trial, the court found that Michael's testimony

- 212 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

revealed that he had no expertise in the work performed by McGill and did not adequately review the work. Michael did not know the standard by which to judge the work, the scope of McGill's work, what work exactly was done, or what area of the building McGill performed work on. Therefore, Michael's testimony "did not rise to the degree necessary for him to have an accepted expert opinion as to the work performed."

### 3. EVIDENCE PRESENTED AT TRIAL

#### (a) Richard McGill

At trial, McGill adduced the testimony of Richard McGill (Richard), who was a co-owner of McGill. Richard testified that McGill had an agreement with Lion to fix improper repairs that had been done previously by a different contractor. Richard explained that he observed that the previous contractor had not properly prepared the area before doing "patchwork."

Richard testified that in 2009, McGill fully completed its obligations under the contract with Lion. McGill also completed some additional repairs outside the scope of the contract without charging for them. Richard supervised McGill's work and reviewed the work after completion. He testified that "[e]verything looked good when we walked away from the project." Richard testified that the bill sent to Lion in October 2009 represented less than the value of the work performed and that McGill never received payment from Lion or any communications about the bill until the present suit was filed.

Richard testified that they discovered early on the issues with the prior repair were much worse than anticipated and "deep repairs" were required. Although Richard observed other areas of the building's facade that required work, Richard said that Lion did not wish to contract McGill to repair those areas, so McGill's job was limited to a 600-square-foot area. McGill attempted to fix as many issues as it could without billing Lion for them because McGill did not "want to go and leave the new repairs exposed to wide open areas of deterioration."

- 213 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

Following Lion's presentation of evidence in support of its counterclaim, McGill recalled Richard as a rebuttal witness concerning the scope and quality of the work performed. Richard described in detail his expertise in the area of masonry and concrete building restoration, including various professional certifications and licenses. Richard also described in more detail the restoration McGill was hired to do at the Lion building. McGill was hired to "sound test" all the stone on the building and to repair 400 feet of stone on the south side. The repair extended around the building to the east side only, "[o]n the one little corner." McGill did not use concrete in its repairs, but, rather, "Thoropatch." McGill used lasers to determine the ambient temperature and never applied the product below its specified ambient temperature.

Richard opined within a reasonable degree of certainty, based on his training, education, and experience, that McGill met the standard for the skill and knowledge of those in the masonry restoration trade when it conducted work on the Lion building in 2009. Richard explained that McGill did everything that it was hired to do. Richard again explained that he discovered that there "were far more extensive issues than [McGill] thought" and advised Lion of that fact. McGill thereafter "modified the scope to go and accomplish what we could accomplish with the money that they had."

Richard testified that he advised Lion of other things that needed to be done in the future to protect the south elevation and complete the work on the east elevation, which Richard testified McGill never touched. Richard testified that he would expect deterioration of the Lion building since 2009 if Lion had failed to hire out further repairs. Richard explained that the "majority of the work that was completed by the previous contractor was never addressed" through Lion's contract with McGill and "[McGill knew that that was defective." Further, McGill had "pointed out many other areas that needed to be addressed in order to protect the work that was being

- 214 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

repaired." Because Lion did not wish to hire anyone to make those repairs,

> water would have continued to get back behind the newly patched materials and the new areas would begin to start falling apart and the already loose materials would continue to deteriorate. And as more and more water got in there and more and more freeze-thaw cycles happened in the winter, the amount of water turning to ice in there would continue to grow, and at some point there would be large pieces starting to fall off of the building.

Richard testified that the presence of cracks in the stone of the exterior of the Lion building did not necessarily indicate the applicator had failed to meet industry standards. Richard explained that a lot of different things can cause cracks, including shrinkage and movement, some of which may occur no "matter what was put in there, who put that in there." Richard summarized, "a crack may be just a crack or a crack may be evidence of a problem."

Richard testified that he had recently looked at the Lion building. It appeared to him that the south side looked much better than the east side. Further, on the south side, the areas that McGill had concentrated on looked much better than the areas that McGill did not concentrate on. On cross-examination, Richard was presented with photographs of the Lion building's facade taken during and after McGill's repair work and entered into evidence by Lion, which showed obvious deterioration. Richard did not recognize any of the areas represented in the photographs as places McGill was hired to perform repair work on.

### (b) Trevor Henery

Lion called Trevor Henery (Trevor), who was the president of Lion in 2009 and the operator of a pub in the Lion building. He was present in certain meetings with McGill to discuss the contract with McGill and the nature of the work it was to perform. Trevor described it as "tuck pointing work

- 215 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

[involving] the south side for sure." He did not recall "the particular scope [of the work to be performed] over the whole building."

After McGill completed the work, Trevor observed cracking, peeling, and flaking on parts of the Lion building. As of the date of trial, Trevor described the building as being in "bad shape," explaining that "[w]e had to have quite a bit of material taken off of the building because of the danger it presented to people on the sidewalk, and it cost quite a bit of money to do that."

### (c) Brandon Henery

Brandon Henery (Brandon), who was the secretary and treasurer of Lion and the manager of the restaurant on the main floor of the Lion building, also testified on Lion's behalf. Brandon testified he was not a member of the board at the time negotiations took place with McGill or when McGill performed work on the building, but had since familiarized himself with the situation.

Brandon testified that in November or December 2009, shortly after McGill completed its work on the Lion building, pieces of stone fell off on its east side. Brandon had seen McGill working on both the south and east sides of the building and had noticed building scaffolding around the southeast corner. The pieces falling off the building were initially small, but in 2014, a piece the size of a manhole cover fell off the east side of the building.

Subsequent to that incident, Brandon obtained bids to repair the facade. Brandon testified that Markuson performed some repair work, "but they decided that they did not want to continue with it," and that thereafter, Western Waterproofing Company (Western) finished the repair work.

### (d) Mark Markuson III

Lion called Markuson, who was the owner of Markuson Construction. The court sustained McGill's renewed objection

- 216 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

to any expert testimony concerning the quality of McGill's work. McGill's counsel argued that if Markuson were allowed to walk the court through his repair bid, it would become evident the same exact work McGill did had to be replaced by another contractor, and that therefore, implicitly, the work was done improperly. The court, however, found any proposed expert testimony lacking in foundation unless it was clear that Markuson proposed a bid to repair the work that McGill improperly conducted. The court explained, "Just because McGill did work on the business, this guy did a bid on the business, but that doesn't mean that he's doing a bid on the work that McGill did." The court also sustained McGill's objection to Markuson's testimony as a fact witness concerning "factual observations as to what he saw," explaining that what Markuson "saw and why he saw it all comes about because he's an expert looking into this and making a bid on that matter."

Lion made an offer of proof as to Markuson's excluded testimony as follows: "[E]ven if . . . Markuson's bid does not get into the record[,] Markuson can testify as a lay witness, a factual witness, as to his observations of the building, what he saw needed repaired, and his conclusions as to what was necessary to rectify that."

On cross-examination, Markuson testified that McGill had an excellent reputation in the industry.

### (e) Craig Moore

Lion next called Moore, who was a project manager at Western. Moore had worked at Western for the past 1½ years. Moore testified that he gave a bid for a project at the Lion building in May 2014.

When asked about the nature of the work he provided a bid for, McGill renewed the objections that were the subject of its motion in limine. Noting exhibit 5, the court ruled that Moore's testimony was to be limited to that of a fact witness as to the work that he performed. Moore was not to testify as

- 217 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

to any deficiencies in McGill's work. Also, Moore was not allowed to testify concerning the cost of the bid and whether it was fair and reasonable, because that requires an expert's opinion. Lion did not make an offer of proof concerning Moore's excluded testimony.

Moore was permitted to testify that Western performed work on the east side of the Lion building. Brandon instructed Western to peel off all the loose stone material off the east facade above the first floor. Workers took approximately 1 week to finish the contracted-for work.

On cross-examination, Moore testified that McGill is one of the best known local restoration companies and that its "customers are usually satisfied with [McGill's] work."

### (f) Michael Henery

Michael testified for Lion, stating that he was its president for the past year and associated with it for the previous 20 years as the Lion building's co-owner. Michael described that McGill was hired to fix faulty work performed by the previous contractor, which involved frozen concrete that was peeling off the building. McGill was to remove the concrete that was installed improperly, to "get to the bottom of it and replace it with a material that would adhere to the building so the building could be restored."

Michael testified that he had an opportunity to observe from ground level some of the work while McGill performed it. He also inspected the property, from ground level, subsequent to McGill's performing the work. The Lion building is five stories high. Michael testified to his observations of what he described as McGill's short workdays, scaffolding in disarray, and pouring what he believed to be concrete when it was freezing at night. Michael testified that McGill's work was not performed in a workmanlike manner, because it poured concrete when it would freeze before having fully set, which resulted in pieces later falling off the building. Michael testified he observed on mornings after freezes that the concrete poured the day before had cracked.

- 218 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

In laying foundation for his expert testimony, Michael described his experience in concrete work and as a home-builder, stating he was familiar with all phases of construction. Michael described that he started a business in grading and landscaping in 1959, and "through that first eight or nine years, I achieved the knowledge to do concrete work." Thereafter, from 1968 to 1981, he was in the housebuilding business. After that, he was vice president of an excavating company, as well as engaged in the restaurant and real estate businesses. He has owned numerous commercial properties.

During voir dire, Michael testified that he had not conducted any testing in connection with the case, has never publicly declared himself an expert in restoration work, and did not hold any specific license or certificates relating to restoration work. On cross-examination, Michael testified he was not a member of any organizations or institutes involving the masonry restoration industry and did not know what the prominent organizations are for the masonry restoration field. He was not an approved applicator for any masonry restoration materials. His experience in masonry work primarily involved a 3-month period in 1959.

Michael testified that he did not know the standards of people in the concrete and masonry restoration industry in 2009. And he did not know what products McGill used in its work for Lion. Michael was not involved in the contract negotiations with McGill and did not know the scope of the work McGill agreed to undertake. Still, Michael testified that whatever McGill had done or however McGill had done it, the work was not in his estimation done in the proper way—because "it didn't stick on the building [and] fell off."

### 4. Exclusion of Exhibit 34
### and Related Testimony

Before trial, the court had granted McGill's motion in limine pursuant to Neb. Rev. Stat. § 27-408 (Reissue 2016) to exclude any communications in compromise negotiations.

- 219 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

The court sustained McGill's objection at trial to the introduction of exhibit 34 on the grounds that it was a compromise negotiation. Exhibit 34 was a letter from McGill to Lion. At trial, the court also sustained McGill's objections to testimony concerning what was said during the meeting referred to in the letter.

In the letter, Richard, on behalf of McGill, states that "[p]er our meeting, I submit the following information in an attempt to resolve the issues between McGill . . . and Lion . . . ." Thereafter, Richard recognized in the letter:

> [T]here are some warranty repair work that we would have completed, had a warranty gone into effect. In attempt to compromise and resolve the lawsuit between us, McGill . . . will complete the "warranty work" at no additional cost to [Lion] after we are paid the full amount that is currently due and owing.

Richard further explained in the letter that "[a]s the first step to begin work on the building," he would have certain experts view the failed areas and obtain recommendations from them for the best repair methods. He also outlined procedures to limit interference with the business traffic of the building and to get the repairs done quickly. He closed with, "Please review this with the board of directors and hopefully we can resolve this issue."

The meeting referred to in the letter took place in front of the Lion building in the fall of 2011, after Lion's complaint had been filed, and was organized by McGill's counsel. Both McGill's counsel and Lion's counsel, Kennedy, were present. Also present were Richard and Trevor. The meeting lasted about 20 minutes.

## 5. VERDICT

At the close of McGill's case, Lion moved for a directed verdict against McGill on its breach of contract claim. Lion did not renew its motion at the close of all the evidence. Lion argued that the discussion between the parties of "all

- 220 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

the different numbers" and "all the different square footages" demonstrated there was never a true meeting of the minds to form a contract in the first instance. The court denied the motion. Following 3 days of trial, the judge, as the trier of fact, found in favor of McGill in its breach of contract action and entered judgment in its favor. In a subsequent order, the court explicitly found against Lion in its counterclaims and dismissed them.

The court specifically found that repairs by another contractor had been done on the building before entering into any agreement with McGill. Lion had been dissatisfied with those repairs and subsequently entered into an oral agreement with McGill to conduct repairs for $25,000. McGill completed the work by October 2009, and despite additional work being done outside of the original agreement, McGill sent an invoice to Lion for the original bid amount of $25,000. Lion refused to pay the invoice. There were no complaints about the work until about 3 years later.

The court found that McGill completed the work properly and in a workmanlike manner, that the work completed was necessary, and that McGill complied with the terms and conditions of the contract it had with Lion. The court noted that Lion provided no expert testimony to support its defenses that the work performed by McGill was improper, unnecessary, or performed in an unworkmanlike manner.

## 6. PREJUDGMENT INTEREST

The judgment in favor of McGill was in the amount of $25,000, plus prejudgment interest at a rate of 12 percent per year commencing November 1, 2009, for a total prejudgment interest amount of $38,875.

## 7. ATTORNEY FEES

Following a separate hearing, the court additionally awarded McGill attorney fees. McGill's counsel pointed out at the hearing on the motion that the case began in 2011 with a simple collection case that McGill filed in county court. Lion filed

- 221 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

a counterclaim that moved the case to district court and that required expert testimony, especially with regard to Lion's counterclaims. McGill's attorney argued that in the many years before a trial finally took place, Lion had plenty of opportunity to realize it did not have an expert to support its cause of action and that it would therefore fail.

In its order granting the fees, the court observed that there was a considerable discovery process and that the case was submitted to the court for various motions, including Lion's attorney's motion to withdraw, which the court granted, and Lion's motion to disqualify McGill's attorney, which the court denied. The court found that Lion was liable for attorney fees, because its defense and counterclaim were frivolous due to the fact that it proceeded to trial without a legitimate expert. Without an expert, the court explained, "there was no way [Lion] could be successful in this matter, which [Lion] knew or should have known." The court found that all actions taken by Lion on and after February 2, 2015, were frivolous.

McGill introduced an affidavit outlining $14,000 in attorney fees in relation to the defense of Lion's counterclaim, beginning in September 2011. Approximately $5,000 in fees and expenses were itemized as incurred after February 2015. The court awarded McGill $5,920 in attorney fees, representing 34 hours of time expended by McGill's attorney in the litigation of this case and the resulting judgment.

## III. ASSIGNMENTS OF ERROR

Lion assigns that the district court erred in (1) excluding testimony from witnesses Lion had designated as fact and expert witnesses; (2) concluding Lion needed expert witness testimony to respond to or rebut McGill's claims; (3) denying the admission of exhibit 34 and preventing trial counsel from making further inquiry relative to exhibit 34; (4) entering judgment in the amount of $25,000; (5) awarding prejudgment interest at the rate of 12 percent per year commencing November 1, 2009; (6) finding that the defense of Lion was

- 222 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

frivolous and awarding attorney fees; and (7) denying Lion a jury trial.

## IV. STANDARD OF REVIEW

[1] In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.[1]

[2] After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.[2]

[3] Judicial discretion is allowed to determine the relevancy of evidence, and such determination will not be disturbed on appeal unless it constitutes an abuse of discretion.[3]

[4,5] We review de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, but a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion.[4] Stated another way, we review de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, and we review for abuse of discretion how the trial court applied the appropriate standards in deciding whether to admit or exclude an expert's testimony.[5]

[6] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[6]

---

[1] *Maloley v. Central Neb. Pub. Power & Irr. Dist.*, 303 Neb. 743, 931 N.W.2d 139 (2019).

[2] *Id.*

[3] *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020).

[4] *Pitts v. Genie Indus.*, 302 Neb. 88, 921 N.W.2d 597 (2019).

[5] *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015), *disapproved on other grounds, Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

[6] *Yeransian v. Willkie Farr*, 305 Neb. 693, 942 N.W.2d 226 (2020).

- 223 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

[7] A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.[7]

[8] The amount of damages to be awarded is a determination solely for the fact finder, and the fact finder's decision will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved.[8]

[9,10] On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.[9] When an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.[10]

## V. ANALYSIS

[11-14] Lion appeals the judgment against it for breach of contract. As a contract consists of a binding promise or set of promises, a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract.[11] To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract.[12] It is well recognized that, as a general rule, every contract for work or services includes an implied duty to perform the work

---

[7] *Dick v. Koski Prof. Group*, 307 Neb. 599, 950 N.W.2d 321 (2020).

[8] *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020).

[9] *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

[10] *Id.*

[11] 23 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 63:1 (4th ed. 2018).

[12] *VRT, Inc. v. Dutton-Lainson Co.*, 247 Neb. 845, 530 N.W.2d 619 (1995).

- 224 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

or services skillfully, carefully, diligently, and in a workmanlike manner.[13] In a "workmanlike manner" connotes work in the same manner that a person skilled in doing such work would do it, and in a manner generally considered skillful by those capable of judging such work in the community of the performance.[14]

Lion challenges the district court's rulings excluding certain testimony of Markuson and Moore concerning what they did, what they observed, and their bids or invoices, which Lion argues constituted relevant lay testimony to show McGill's work was not performed in a workmanlike manner. Lion generally asserts that the district court was wrong in reasoning that Lion needed expert testimony to establish that McGill's work was done in an unworkmanlike manner. However, Lion also argues the court erred in "strik[ing]" and "not giv[ing] any consideration" to the expert testimony of Michael that McGill's work was not done in a workmanlike manner.[15] Lion argues that the court erred in excluding evidence relating to the 2011 meeting as compromise negotiations. Lion also asserts that its right to a jury trial was violated and that the district court erred in awarding McGill prejudgment interest and attorney fees. We address each of these arguments in turn.

### 1. Jury Trial

[15,16] The right to a jury trial is guaranteed by Neb. Const. art. I, § 6. The court found that Lion had waived the right

---

[13] *Pioneer Enterprises v. Edens*, 216 Neb. 672, 345 N.W.2d 16 (1984).

[14] See, *Burnett & Bean v. Miller*, 205 Ala. 606, 88 So. 871 (1921); *Brown v. Eakins*, 220 Or. 122, 348 P.2d 1116 (1960); *Sundance Develop., Inc. v. Standard Lbr. & Hard. Co.*, 520 P.2d 1056 (Colo. App. 1974); *McKinley v. Brandt Constr., Inc.*, 168 Ohio App. 3d 214, 859 N.E.2d 572 (2006); *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680 (Tex. App. 2012). See, also, *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85 (2000); *Helterbrand v. Five Star Mobile Home Sales*, 48 S.W.3d 649 (Mo. App. 2001).

[15] Brief for appellant at 20.

- 225 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

to a jury trial and that McGill would be prejudiced if the court were to allow Lion to withdraw that waiver. A waiver of a jury trial in district court is statutorily governed by § 25-1126, which provides an exclusive list of the manners in which a waiver occurs.[16] Relevant here is § 25-1126(3), "by oral consent in open court entered on the journal."

During the hearing on February 13, 2015, Lion's new counsel affirmed that the trial would be to the bench, stating, "That's correct, Your Honor." Lion's withdrawing counsel, Kennedy, who was also present and participating in the conversation, appeared to be in agreement.

[17,18] Lion does not argue on appeal that its new attorney who entered an appearance at the hearing did not actually represent it, and the right of an attorney to enter an appearance for a party can be called in question only by the party.[17] In any event, when an attorney appears in an action as the representative of a party to the action, the presumption of the law is that the attorney appears by the authority of the party whom the attorney assumes to represent.[18]

[19-21] A client is bound by the acts, omissions, neglect, and fraud of the client's attorney if such conduct is within the attorney's scope of express, implied, apparent, or ostensible authority.[19] From the nature of the attorney-client relationship itself, a lawyer derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions.[20] That authority is not absolute; it does not, for example, encompass settlement of a claim without a client's specific consent or silence in open court.[21] But it encompasses the choice, in

---

[16] See *Jacobson v. Shresta*, 288 Neb. 615, 849 N.W.2d 515 (2014).

[17] *Baldwin v. Foss*, 14 Neb. 455, 16 N.W. 480 (1883).

[18] See *Cave v. Reiser*, 268 Neb. 539, 684 N.W.2d 580 (2004).

[19] See *VRT, Inc. v. Dutton-Lainson Co., supra* note 12.

[20] *Luethke v. Suhr*, 264 Neb. 505, 650 N.W.2d 220 (2002).

[21] See *id.*

- 226 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

a civil action as opposed to a criminal action,[22] to waive a jury trial.[23]

In arguing that it did not waive its right to a jury trial, Lion offers only the conclusory statement that "there is no record of any 'oral consent in open court entered on the journal' attesting to any waiver of a jury trial by [Lion]."[24] We find, however, that the explicit statement of Lion's new counsel in open court that it was correct that they would be having a bench trial qualified as consent to a bench trial. And, in an order filed on March 3, 2015, the court found that Lion's counsel had waived the right to a jury trial. This qualified as having been entered on the journal. Lion waived its right to a jury trial pursuant to § 25-1126(3).

The court has discretion to permit an application to withdraw the waiver if it is timely made and has not been acted on to the prejudice of another party.[25] The district court here found that to allow Lion to withdraw its waiver would delay the matter and prejudice McGill. An abuse of discretion occurs when a trial court's decision or reasoning is clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[26] We find

---

[22] See *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) (decisions in criminal case of whether to plead guilty, whether to waive jury trial, whether to testify, and whether to appeal are fundamental and personal to defendant; almost all other decisions are considered strategic or tactical decisions and fall within lawyer's control).

[23] See *id*. See, also, *Middleton v. Stavely*, 124 Colo. 88, 235 P.2d 596 (1951); *McLyman v. Miller*, 52 R.I. 374, 161 A. 111 (1932); *Smith v. Barnes*, 9 Misc. 368, 29 N.Y.S. 692 (N.Y. Sup. 1894); *Beal v. Doe*, 987 S.W.2d 41 (Tenn. App. 1998). But see, *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 696 P.2d 645, 212 Cal. Rptr. 151 (1985); *Graves v. P. J. Taggares Co.*, 94 Wash. 2d 298, 616 P.2d 1223 (1980).

[24] Brief for appellant at 35.

[25] *Jacobson v. Shresta, supra* note 16. See, also, *McKinney v. County of Cass*, 180 Neb. 685, 144 N.W.2d 416 (1966).

[26] *Jaeger v. Jaeger, supra* note 3.

- 227 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

that the district court did not abuse its discretion in refusing to allow Lion to withdraw its waiver.

## 2. Exclusion of Exhibit 34

Turning to the trial, we address Lion's argument that the court erred in excluding exhibit 34 and in excluding testimony relating to Richard's statements made in the meeting referred to in exhibit 34. The court found that the exhibit and the testimony at issue were inadmissible under § 27-408, which governs compromise and offers to compromise. Lion asserts Richard's statements at the meeting and in the letter were admissible "for another purpose," pursuant to § 27-408, as either (1) admissions against interest that the work was done in an unworkmanlike manner or (2) to impeach Richard's testimony that the work had been done in a workmanlike manner and that $25,000 was reasonable for the work performed.

[22] If a statement violates the Nebraska Evidence Rules governing compromise and offers to compromise, a trial court does not have discretion to admit the statement.[27] However, a court's determination of preliminary questions of fact conditioning the applicability of the exclusionary rule set forth in § 27-408 are reviewed for clear error.[28]

Section 27-408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove

[27] See *Pribil v. Koinzan*, 11 Neb. App. 199, 647 N.W.2d 110 (2002), *reversed on other grounds* 266 Neb. 222, 665 N.W.2d 567 (2003).

[28] See *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011). See, also, *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820 (2d Cir. 1992); *Affiliated Mfrs., Inc. v. Aluminum Co. of America*, 56 F.3d 526 (3d Cir. 1995); *Trans Union Credit Info. v. Assoc. Credit Services*, 805 F.2d 188 (6th Cir. 1986); *E.E.O.C. v. Gear Petroleum, Inc.*, 948 F.2d 1542 (10th Cir. 1991); *First Interstate Bank of Billings v. U.S.*, 61 F.3d 876 (Fed. Cir. 1995).

- 228 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

liability for or invalidity of the claim or its amount. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis supplied.)

[23,24] The inadmissibility of evidence of negotiations and compromise or settlement of a claim reflects a public policy consideration favoring compromise of disputes.[29] Furthermore, evidence of negotiations and compromise or settlement of a claim is irrelevant because the transaction is motivated by a desire for peace rather than from the strength or weakness of a claim.[30] The exclusion set forth in § 27-408 extends to settlements, negotiations, and offers to compromise made by either of the parties with or to third persons concerning a cause of action relative to the same transaction or same subject matter involved in the litigation at hand.[31] The exclusion set forth in § 27-408 does not distinguish between offers to settle and admissions of fact made during settlement negotiations.[32]

At trial, Richard explained there was a meeting in front of the Lion building in the fall of 2011. The meeting was organized by his trial counsel. It was undisputed that at the time of the meeting, the complaint against Lion by McGill had been filed. In the letter marked as exhibit 34, Richard, on behalf of McGill, states that "[p]er our meeting, I submit the following

---

[29] See *Baker v. Blue Ridge Ins. Co.*, 215 Neb. 111, 337 N.W.2d 411 (1983).

[30] See *id.*

[31] See *id.*

[32] See *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652 (4th Cir. 1988).

- 229 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

information *in an attempt to resolve the issues* between McGill . . . and Lion . . . ." (Emphasis supplied.) Richard then acknowledged to Lion its obligations to complete "warranty repair work . . . had a warranty gone into effect" and offered to begin such work within 2 days of receiving the payment it considered due for the work it had completed.

Kennedy testified that the purpose of the meeting was "so the parties actually have the ability to go through what was wrong with the building." Trevor testified that the purpose of the fall 2011 meeting with Richard that was arranged by McGill's counsel was to "see if we could get some deficiencies fixed." Trevor denied that the purpose of the meeting was for "any sort of settlement." According to Kennedy, there were no specific offers of settlement made during the meeting and Richard had made admissions that warranty work should have been done on the property. Nevertheless, in his affidavit, Kennedy also stated that Richard, during the meeting, "stated he would not perform any work without being paid in full, but was open to compromising on the matter after an inspection of the [Lion building]."

Whether a particular writing, conduct, or statement is made in or a product of compromise negotiations is largely a question of fact.[33] We find that the district court did not clearly err in determining that Richard's statements concerning the condition of the building, its possible causes, and an offer to conduct warranty repairs were statements made during, or a product of, compromise negotiations. Further, we find that the court did not err in determining that the letter contained in exhibit 34 was an attempt to compromise a disputed claim.

The letter and statements Lion sought to adduce were not evidence otherwise discoverable and excluded merely because they were presented in the course of compromise negotiations. Section 27-408 mirrors the original version of Fed. R. Evid.

---

[33] See, *Goon v. Gee Kung Tong, Inc.*, 544 A.2d 277 (D.C. App. 1988); *J.C. Compton Co. v. Brewster*, 185 Or. App. 382, 59 P.3d 1288 (2002).

- 230 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

408, which became effective in 1975. In enacting federal rule 408, the statement that the rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations was added to ensure that evidence, such as documents, were not immunized from admissibility by being strategically presented in the course of compromise negotiations.[34] This provision of federal rule 408 also ensures that a fact presented during compromise negotiations is not immunized from admissibility if that fact sought to be presented at trial was obtained from sources independent of the compromise negotiations.[35] The statements at issue were not obtained from sources independent of the compromise negotiations and were not documents that merely happened to be presented during compromise negotiations. Instead, they were part and parcel of the attempt to compromise a disputed claim.

We find no merit to Lion's argument that the evidence did not fall under the exclusionary rule of § 27-408 because it was admissible for "another purpose." Lion describes this other purpose as either an admission against interest regarding whether McGill performed the work in a workmanlike manner or impeachment of Richard's testimony that the work was done in a workmanlike manner and that the contract price was reasonable for the work performed.

[25] It has long been recognized that to use conduct or statements in compromise negotiations for impeachment would tend to swallow the exclusionary rule and impair the public policy of promoting settlements; therefore, admissibility as an inconsistent statement does not fall under the "another purpose" exception to the exclusionary rule of § 27-408.[36] In fact, amendments to federal rule 408(a) in 2006 explicitly clarify

---

[34] See 3 Michael H. Graham, Handbook of Federal Evidence § 408:1 (9th ed. 2020).

[35] See *id.*

[36] See 2 McCormick on Evidence § 266 (8th ed. 2020).

- 231 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

that conduct or statements made in settlement negotiations are not admissible for "another purpose" to impeach a prior inconsistent statement. As one authority has explained, "The use of inconsistent statements made in compromise negotiations for general impeachment of the testimony of a party is fraught with danger of misuse of the statements to prove liability, threatens frank interchange of information during negotiations, and generally should not be permitted."[37]

[26] Similarly, an admission against interest concerning an element of the disputed claim is not an exception to the general inadmissibility of conduct or statements made in settlement negotiations.[38] Allowing such an exception would swallow the exclusionary rule premised on the idea that settlement negotiations would be inhibited if the parties knew that statements made in the course of compromise negotiations might later be used against them as admissions of liability.[39]

The statements at issue directly concerned elements of McGill's cause of action and of its defense to Lion's counterclaims. They were made in the course of compromise negotiations for the purpose of reaching an agreement that would avoid litigation. Regardless of whether they would otherwise qualify as admissions against interest or impeachment, questions we need not decide here, they fell under the exclusionary rule of § 27-408. The court did not err in excluding exhibit 34. Nor did the court err in excluding witness testimony as to statements Richard made during the 2011 meeting between the representatives of Lion and McGill and their respective attorneys.

---

[37] *Id.*, § 266 at 356.

[38] See *Idaho State Bar v. Frazier*, 136 Idaho 22, 28 P.3d 363 (2001). See, also, *Matter of Estate of Ruediger*, 83 Wis. 2d 109, 264 N.W.2d 604 (1978).

[39] See *U. S. v. Contra Costa County Water Dist.*, 678 F.2d 90 (9th Cir. 1982). See, also, *Central Soya Co., Inc. v. Epstein Fisheries, Inc.*, 676 F.2d 939 (7th Cir. 1982); *Hulter v. C.I.R.*, 83 T.C. 663 (1984).

- 232 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

### 3. Exclusion of Markuson's and
### Moore's Testimony

Lion next argues that the district court erred in limiting Markuson's and Moore's allegedly lay testimony. Lion does not argue that Markuson and Moore were expert witnesses and that the court erred in disallowing their expert testimony; Lion affirmatively asserts that they "were not experts."[40] Lion asserts that the testimony should have been allowed in these witnesses' capacity as fact witnesses concerning what they did, what they observed, and their bids or invoices. Lion asserts such testimony was helpful to a clear understanding of "why was a bid to redo work recently performed appropriate, or why it was necessary to perform concrete repairs and what the reasonable charges for such repairs would be."[41]

[27] We note that while Lion also argues that the district court erred in excluding exhibits 36 through 38, which contained Markuson's and Moore's bids, Lion does not assign the exclusion of those exhibits as error. In order to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief.[42]

At trial, the court sustained McGill's objections to Markuson's and Moore's testimony as to any alleged deficiencies in McGill's work and the cost of their bids. Their testimony would be limited to describing the work they performed. Moore thereafter testified that Western peeled off all loose stone material from the east facade above the first floor. Markuson effectively did not testify.

While Lion made an offer of proof concerning Moore's bid and a companion document of his general observations and recommendations for repair, which were contained in exhibits 36 and 37, Lion did not make an offer of proof as to

---

[40] Brief for appellant at 17.

[41] *Id.* at 19.

[42] *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020).

- 233 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

Moore's testimony. Concerning Markuson's testimony, Lion made an offer of proof that, as a lay witness, Markuson would testify "as to his observations of the building, what he saw needed repaired, and his conclusions as to what was necessary to rectify that."

Under Neb. Rev. Stat. § 27-103 (Reissue 2016), error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and, where the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. It appears from the context that the excluded testimony by Moore was similar to that outlined in the offer of proof for Markuson—the amount of the bids and the deficiencies that created a need for their repairs.

Judicial discretion is allowed to determine the relevancy of evidence, and such determination will not be disturbed on appeal unless it constitutes an abuse of discretion.[43] We conclude that the district court did not abuse its discretion.

In limiting the testimony, the court relied less on the discovery sanction and more on the fact that it found Markuson and Moore lacked foundation to opine on whether McGill's work was deficient or that the bids were a reflection of the costs to repair McGill's deficient work. The court explained that there was no evidence Markuson and Moore had proposed bids to repair the repair work done by McGill. To the contrary, both witnesses had averred that they were unaware of what work had been done by prior contractors and had not formed any opinions or conclusions concerning McGill's prior work for Lion, because they lacked sufficient information to do so.

Lion did not contest this point but believed that the court could piece together an inference of deficient performance through a combination of Markuson's and Moore's testimonies and the other evidence in the case. The combined evidence,

---

[43] *Jaeger v. Jaeger, supra* note 3.

- 234 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

according to Lion, would show that "the same exact work that McGill did had to be replaced by another contractor and, therefore, implicitly the work was done improperly."

[28] But ultimately, there was little other evidence presented at trial that adequately demonstrated the work Markuson and Moore were asked to fix was the same work done by McGill previously. Richard testified that the work Lion contracted them for was limited to a 600-square-foot area mainly on the east side that extended in one small corner on the south side. While numerous photographs were admitted into evidence showing deterioration of the building's facade, Richard did not recognize any of the areas photographed as areas McGill was hired to perform work on. Brandon testified that stone later fell off the east side of the building, but he was not privy to what precise area McGill had been hired to work on. Trevor testified as to his observations of cracking, peeling, and flaking on the Lion building's facade, which was a danger to the public, and he said that it "cost quite a bit of money" to have that material removed, but he did not recall the particular scope of the work McGill was hired to perform. Evidence of a deficiency is immaterial without the identity of the person charged with responsibility for the work.[44]

In addition to the lack of evidence clearly connecting the 600-foot area McGill was contracted to repair with the evidence of general failures of the facade, it was, as we discuss next, outside the scope of ordinary experience to determine whether the failures of the facade demonstrated McGill's poor workmanship or were attributable to some other cause.

### 4. Need for Expert Testimony and Whether Michael's Testimony Qualified

Lion generally assigns and argues that the court erred in entering judgment against it and, in doing so, determining it could not prove McGill acted in an unworkmanlike manner

---

[44] See *Mitchell v. Eyre*, 190 Neb. 182, 206 N.W.2d 839 (1973).

- 235 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

without expert testimony. This error, argues Lion, was compounded by the court's order "strik[ing]" Michael's expert testimony.[45]

[29,30] Findings of fact as to technical matters beyond the scope of ordinary experience are usually not warranted in the absence of expert testimony supporting such findings.[46] Whether a skilled contractor breached a contract to render services in the practice of the trade by failing to conduct the work in a workmanlike manner depends on whether the contractor exercised the skill and knowledge normally possessed by members of the trade in good standing in similar communities.[47]

[31] Ordinarily, the standard of care for the rendering of services in the practice of a trade is outside the common knowledge and experience of ordinary persons and must, therefore, be established by expert testimony.[48] Nevertheless, Lion argues that the facts of this case are akin to a situation where, for example, someone contracts for a leaking roof and the roof continues to leak immediately after the repairs. Making arguments reminiscent of the negligence doctrine of res ipsa loquitur,[49] Lion asserts that the failure to perform in a workmanlike manner in such a scenario is not beyond the comprehension of lay people and that no expert testimony is required to prove breach of contract.

---

[45] Brief for appellant at 20.

[46] *Roskop Dairy v. GEA Farm Tech., supra* note 5.

[47] See, *Schwarz v. Platte Valley Exterminating, supra* note 14; *Topil v. Hub Hall Co.*, 230 Neb. 151, 430 N.W.2d 306 (1988); *Schuster v. Baumfalk*, 229 Neb. 785, 429 N.W.2d 339 (1988); *Doupnik v. Usher Pest Control Co.*, 217 Neb. 1, 346 N.W.2d 699 (1984); *Zimmer v. Brandon*, 134 Neb. 311, 278 N.W. 502 (1938). See, also, *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998).

[48] See *Bargmann v. Soll Oil Co., supra* note 47.

[49] See *McLaughlin Freight Lines v. Gentrup*, 281 Neb. 725, 798 N.W.2d 386 (2011).

- 236 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

[32] It is true that expert testimony is not necessarily required to establish a breach by the failure to achieve a promised particular result that can be shown by lay witness observations,[50] but that is when the contract explicitly guarantees a certain result and not just to perform in a workmanlike fashion according to industry standards.[51] While Lion makes reference to Richard's testimony concerning warranties and the excluded testimony and letter regarding the same, there is no indication in the evidence admitted or excluded that the warranty, if any, would be to ensure that the areas on the building worked on would not fail or deteriorate due to any cause.

It was undisputed that a prior contractor had performed deficient work on the building's facade, and there was evidence that McGill was only contracted to repair some of that deficient work. There was evidence that McGill informed Lion that more repair work needed to be conducted on the surrounding areas and that Lion's failure to do so would have jeopardized the integrity of McGill's repairs. McGill did not have exclusive control and management over the building. No other work was done on the facade until 2014.

Under these facts, it cannot be surmised merely from the deterioration of the facade—even if there had been testimony directly proving the failures were of the areas McGill had contracted to repair—that McGill failed to substantially comply with its implied duty to complete the contracted-for repairs in a workmanlike manner. Leaving aside whether expert testimony would be necessary under different facts, expert testimony was necessary in this case to determine the technical sufficiency of McGill's structural work and installations.[52] The

---

[50] See *Hone v. Advanced Shoring & Underpinning*, 291 P.3d 832 (Utah App. 2012).

[51] See *id.*

[52] See *CCC Group, Inc. v. South Cent. Cement, Ltd.*, 450 S.W.3d 191 (Tex. App. 2014).

- 237 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

technical nature of the repair work and the number of potential factors affecting its durability were outside the scope of ordinary experience.

[33] Lion argues that Michael provided such expert testimony and that the court erred in disregarding it. We disagree. The trial court is given discretion in determining whether or not a witness is qualified to state an expert opinion, and such determination will not be disturbed on appeal absent an abuse of discretion.[53] It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give an opinion about an issue in question.[54] The court found that Michael's testimony "did not rise to the degree necessary for him to have an accepted expert opinion as to the work performed."

The district court did not abuse its discretion. Michael opined that McGill performed its work in an unworkmanlike manner by pouring concrete during the day when it would freeze at night before the concrete had set. But, on cross-examination, Michael admitted he did not know the scope of the work McGill had agreed to undertake under the contract nor what products McGill had used on the Lion building. Richard testified that McGill did not use concrete but, rather, "Thoropatch," and that McGill used lasers to determine the ambient temperature and never applied the product below its specified ambient temperature.

Michael admitted he had observed the facade only from the ground level and had never conducted any testing in relation to the case. Michael also admitted that his experience in masonry work primarily involved a short period decades before and that he did not know the standard of people in the concrete and masonry industry in 2009, when McGill performed its work.

---

[53] *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996).

[54] *Liberty Dev. Corp. v. Metropolitan Util. Dist.*, 276 Neb. 23, 751 N.W.2d 608 (2008).

- 238 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

[34,35] In the end, Michael testified that McGill must not have done the work in a workmanlike manner, "because it didn't stick on the building. It falls off the building. So, consequently, whatever they've done and however it was done was wrong . . . ." An expert must have good grounds for the expert's belief in every step of the analysis.[55] The term "good grounds" means an inference or assertion derived by scientific method and supported by appropriate validation.[56]

[36,37] Michael did not know whether the exact areas repaired by McGill failed. And, as we have stated in other cases, it is a logical fallacy to assume that temporal correlation equals causation.[57] Simply because the facade demonstrated deterioration after McGill performed its work does not mean it was a failure by McGill to substantially comply with its duties under the contract that caused the deterioration. It is well settled that a causation opinion based solely on a temporal relationship is unreliable, because it is not derived from the scientific method.[58] Such an opinion is also unreliable because it is not based upon sufficient facts or data.[59]

The court's verdict was not tainted by an error at law or any abuse of discretion in its exclusion of evidence. Nor was it clearly erroneous. The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous.[60] In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful

---

[55] *Roskop Dairy v. GEA Farm Tech., supra* note 5.

[56] *Id.*

[57] See *id.*

[58] *Id.*

[59] *Id.*

[60] *McCully, Inc. v. Baccaro Ranch*, 284 Neb. 160, 816 N.W.2d 728 (2012).

- 239 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

party, who is entitled to every reasonable inference deducible from the evidence.[61] The court did not clearly err in finding that McGill completed the work properly and in a workmanlike manner, that the work completed was necessary, and that McGill complied with the terms and conditions of the contract it had with Lion.

### 5. ATTORNEY FEES

We turn to the question of whether, because of the lack of expert testimony by Lion that McGill performed its work in an unworkmanlike manner, Lion's defense of the breach of contract claim and its assertion of its counterclaims were frivolous. The district court concluded that without an expert, "there was no way [Lion] could be successful in this matter, which [Lion] knew or should have known."

Neb. Rev. Stat. § 25-824 (Reissue 2016) provides in relevant part:

> (2) Except as provided in subsections (5) and (6) of this section, in any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.
>
> (3) When a court determines reasonable attorney's fees or costs should be assessed, it shall allocate the payment of such fees or costs among the offending attorneys and parties as it determines most just and may charge such amount or portion thereof to any offending attorney or party.
>
> (4) The court shall assess attorney's fees and costs if, upon the motion of any party or the court itself, the court finds that an attorney or party brought or defended an

---

[61] *Hooper v. Freedom Fin. Group*, 280 Neb. 111, 784 N.W.2d 437 (2010).

- 240 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

action or any part of an action that was frivolous or that the action or any part of the action was interposed solely for delay or harassment. If the court finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct, including, but not limited to, abuses of civil discovery procedures, the court shall assess attorney's fees and costs.

(5) No attorney's fees or costs shall be assessed if a claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in this state or if, after filing suit, a voluntary dismissal is filed as to any claim or action within a reasonable time after the attorney or party filing the dismissal knew or reasonably should have known that he or she would not prevail on such claim or action.

Neb. Rev. Stat. § 25-824.01 (Reissue 2016) provides:

In determining the amount of a cost or an attorney's fee award pursuant to subsection (2) of section 25-824, the court shall exercise its sound discretion. When granting an award of costs and attorney's fees, the court shall specifically set forth the reasons for such award and shall, in determining whether to assess attorney's fees and costs and the amount to be assessed against offending attorneys and parties, consider the following factors, including, but not limited to: (1) The extent to which any effort was made to determine the validity of any action or claim before the action was asserted; (2) the extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses that have been found not to be valid; (3) the availability of facts to assist the party to determine the validity of a claim or defense; (4) the relative financial position of the parties involved; (5) whether or not the action was prosecuted or defended in whole or in part in bad faith; (6) whether or not issues of fact, determinative of the validity of a party's claim

- 241 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

or defense, were reasonably in conflict; (7) the extent to which the party prevailed with respect to the amount of and number of claims in controversy; (8) the amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court; (9) the extent to which a reasonable effort was made to determine prior to the time of filing of a claim that all parties sued or joined were proper parties owing a legally defined duty to the plaintiff or defendant; and (10) the extent of any effort made after the commencement of an action to reduce the number of parties in the action.

[38] In determining whether to assess attorney fees and costs and the amount to be assessed against offending attorneys and parties, the court considers a number of factors, including, but not limited to, the 10 factors listed in § 25-824.01.[62] On appeal, a trial court's decision awarding or denying attorney fees and the amount thereof will be upheld absent an abuse of discretion.[63]

[39] The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous.[64] Section 25-824(5) contemplates that attorney fees may be assessed when a party persists in asserting a claim after it knows or reasonably should know it would not prevail on the claim.[65] While Lion's defense and counterclaims may not have begun as frivolous, the district court did not abuse its discretion in determining that after several years of discovery and pretrial motions and hearings, Lion reasonably should have known it would not prevail without expert testimony with proper

---

[62] *In re Guardianship of Aimee S.*, 26 Neb. App. 380, 920 N.W.2d 18 (2018).

[63] See *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013). See, also, § 25-824.01.

[64] *Korth v. Luther*, 304 Neb. 450, 935 N.W.2d 220 (2019).

[65] *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020).

- 242 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

foundation establishing that McGill's work was not done in a workmanlike manner. Likewise, we do not find that the district court abused its discretion in determining the amount of the fees and expenses to be awarded.

### 6. Prejudgment Interest

[40] Finally, we turn to the question of prejudgment interest. The judgment in favor of McGill was in the amount of $25,000, plus prejudgment interest at a rate of 12 percent per year commencing November 1, 2009, for a total prejudgment interest amount of $38,875. Awards of prejudgment interest are reviewed de novo.[66]

Neb. Rev. Stat. §§ 45-103.02(1) and (2) and 45-104 (Reissue 2010) provide alternate and independent means of recovering prejudgment interest.[67] All three of these statutory provisions establish different criteria for the recovery of prejudgment interest, and none makes the recovery of prejudgment interest contingent on proof of another.[68]

Section 45-103.02(1) provides for prejudgment interest of unliquidated claims:

> Except as provided in section 45-103.04, interest as provided in section 45-103 shall accrue on the unpaid balance of unliquidated claims from the date of the plaintiff's first offer of settlement which is exceeded by the judgment until the entry of judgment if all of the following conditions are met:
>
> (a) The offer is made in writing upon the defendant by certified mail, return receipt requested, to allow judgment to be taken in accordance with the terms and conditions stated in the offer;

---

[66] *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

[67] See *Weyh v. Gottsch, supra* note 5.

[68] *Id.*

- 243 -

Nᴇʙʀᴀsᴋᴀ Sᴜᴘʀᴇᴍᴇ Cᴏᴜʀᴛ Aᴅᴠᴀɴᴄᴇ Sʜᴇᴇᴛs
309 Nᴇʙʀᴀsᴋᴀ Rᴇᴘᴏʀᴛs
Mᴄɢɪʟʟ RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

(b) The offer is made not less than ten days prior to the commencement of the trial;

(c) A copy of the offer and proof of delivery to the defendant in the form of a receipt signed by the party or his or her attorney is filed with the clerk of the court in which the action is pending; and

(d) The offer is not accepted prior to trial or within thirty days of the date of the offer, whichever occurs first.[69]

The purpose of § 45-103.02 is to encourage settlement of tort cases by authorizing the recovery of prejudgment interest when a reasonable settlement demand is refused.[70]

Section 45-103.02(2) authorizes the recovery of prejudgment interest of liquidated claims[71] and provides: "Except as provided in section 45-103.04, interest as provided in section 45-104 shall accrue on the unpaid balance of liquidated claims from the date the cause of action arose until the entry of judgment."

Section 45-104 authorizes the recovery of prejudgment interest on four categories of contract-based claims without regard to whether the claim is liquidated or unliquidated.[72] Those four categories are (1) on any instrument in writing; (2) on settlement of the account from the day the balance shall be agreed upon; (3) on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof; and (4) on money loaned or due and withheld by unreasonable delay of payment. Section 45-104 provides:

Unless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum on money due on any instrument in writing, or on settlement of the

---

[69] See, also, *id.*

[70] *Id.*

[71] See *id.*

[72] *Id.*

- 244 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

account from the day the balance shall be agreed upon, on money received to the use of another and retained without the owner's consent, express or implied, from the receipt thereof, and on money loaned or due and withheld by unreasonable delay of payment. Unless otherwise agreed or provided by law, each charge with respect to unsettled accounts between parties shall bear interest from the date of billing unless paid within thirty days from the date of billing.

The court did not explicitly state under which statute it was awarding prejudgment interest. It awarded interest commencing November 1, 2009, however, which was just 2 days after October 30, the date McGill presented Lion with an invoice for the work performed. In that respect it appears the court relied on § 45-104.

Lion makes several arguments on appeal that the claim was not liquidated for purposes of prejudgment interest under § 45-103.02(2) and that McGill failed to establish the statutory preconditions for prejudgment interest under § 45-103.02(1) for an unliquidated claim. McGill does not dispute, however, that its claim was unliquidated, and it does not assert that it was entitled to prejudgment interest for an unliquidated claim under § 45-103.02(1). McGill instead argues that the requirements of § 45-104 were clearly satisfied.

Lion's only challenge on appeal to an award of prejudgment interest pursuant to § 45-104 is that McGill failed to comply with Neb. Ct. R. Pldg. § 6-1108(a), which states:

(a) **Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a caption, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded. If the recovery of money be demanded, the

- 245 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
McGILL RESTORATION v. LION PLACE CONDO. ASSN.
Cite as 309 Neb. 202

amount of special damages shall be stated but the amount of general damages shall not be stated; *and if interest hereon be claimed, the time from which interest is to be computed shall also be stated.*

(Emphasis supplied.)

[41] Lion argues that McGill did not comply with § 6-1108(a), because the complaint did not identify a date for commencement of prejudgment interest. The complaint did ask for prejudgment interest, and Lion had an opportunity to be heard on the issue before it was decided. We have held that compliance with § 6-1108(a) is not determinative where entitlement to interest is based on statute and the adverse party had notice and an opportunity to be heard prior to judgment.[73] Therefore, we find no merit to Lion's assertion that McGill's failure to strictly comply with § 6-1108(a) precluded the district court's award of prejudgment interest.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Affirmed.

Miller-Lerman, J., not participating.
Cassel, J., concurs in the result.

---

[73] *AVG Partners I v. Genesis Health Clubs, supra* note 66.